UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2004 JUN 10  A 11: 42

U.S. DISTRICT COURT

KARAMJEET S. PAUL,           )
              Petitioner     )
                             )
vs.                          )     Civil Action No. C04-40037-RCL
                             )
DAVID L. WINN, Warden        )
Federal Medical Center, Devens, )
              Respondent     )
_____)

### PETITIONER'S OPPOSITION AND MEMORANDUM IN OPPOSITION TO GOVERNMENT'S MOTION TO DISMISS AND TO MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION TO DISMISS

**INTRODUCTORY STATEMENT**

Since December 2002, a number of petitions/complaints related to the BOP's new halfway-house policy have been filed by sentenced defendants and inmates and decided by courts with differing results—some in favor of defendants/inmates and others against.  However, the government's assertion that this Petition "involves end of the sentence issues" and therefore is different from other cases—particularly Monahan v.Winn, 276 F. Supp. 2d 196 (D.Mass. 2003)—is disengenuous at the very least.  Before summarizing the caselaw supporting his opposition, the Petitioner wishes to elaborate on why he believes the government's assertion is disengenuous.

While every case is somewhat different (several of the early decisions after December 2002 involved petitioners who were sentenced with a recommendation of community confinement), the principles and definitions are the same and one common theme runs through all the cases cited by the Petitioner: regardless of beginning-of-the-sentence or end-of-the-sentence, in every one of these cases (particularly Monahan) the courts have ruled the BOP's Policy in question invalid on at least one and in some cases all four grounds presented in this Petition.  In addition, Monahan (since the govern-

-1-

ment singles it out) is really four cases (Monahan v. Winn, cv-03-40075-NG, Sardinha v. United States, cv-03-10308-NG, United States v. Costello and Silveira, cr-01-10385-NG, Pereira v. Winn, cv-03-40139-NG). Pereira involved an end-of-the-sentence situation exactly like the Petitioner's. In finding the new BOP Policy invalid on all four grounds, Judge Gertner issued a 59-page opinion and ruled in favor of each petitioner, including Pereira. The government's memorandum conveniently omits these details.

The government in its memorandum attempts to put distance between this Petition and the cases cited by the Petitioner with a cursory end-of-the-sentence comment rather than addressing the analysis that invalidates or demonstrating the validity of the BOP Policy in question. The weight of the analyses and caselaw demonstrating that the BOP's 12/20/02 Policy is invalid is overwhelming. There does not appear to be a single opinion that found the 12/20/02 Policy invalid but the decision inapplicable to a petitioner on end-of-the-sentence grounds. And finding the 12/20/02 Policy invalid is what this Petition is seeking.

As shown in the table on the next page, there are numerous court rulings that found the 12/20/02 Policy invalid. Several of them relate to end-of-the-sentence cases which are identified with an asterisk.

At the same time, while in several cases known to the Petitioner district judges have ruled in favor of the government, only one such case (Benton v. Ashcroft, 273 F. Supp. 2d 1139 (S.D.Cal. 2003)) was accompanied by a detailed written opinion as distinguished from a short memorandum or order. The Benton decision was stayed by the district judge who wrote it pending appeal to the Ninth Circuit. That appeal is awaiting arguments.

In addition, in several cases the courts have resentenced the petitioners in light of the new BOP Policy: United States v. Serpa, 251 F. Supp.

-2-

2d 988 (D.Mass. 2003), <u>United States v. Godbout</u>, CR-02-10082-RCL (D.Mass.
2003) and <u>United States v. Costello and Silveira</u>, CR-01-10385-NG (D.Mass.
2003) (under the <u>Monahan</u> opinion).

---

TABLE

Court Rulings Invalidating the 12/20/02 Policy

| Decisions | End-of-the Sentence Case | GROUNDS FOR INVALIDATING THE NEW CCC POLICY | | | |
|---|---|---|---|---|---|
| | | Erroneous Interpret. | Violation of APA Statute | Violation of Ex Post Facto | Violation of ... Due Proc. |
| Monahan v. Winn | | | | | |
|  -Monahan v Winn | | X | X | X | X |
|  -Sardinha v US | | X | X | X | X |
|  -US v Costello | | X | X | X | X |
|  -Pereira v Winn | * | X | X | X | X |
| Iacaboni v US | | X | X | X | X |
| Greenfield v Menifee | * | X | X | | |
| Cato v Menifee | * | X | X | X | |
| Zucker v Menifee | * | X | | | |
| Byrd v Moore | | X | X | X | X |
| Cioffoletti v FBP | * | X | X | X | X |
| Hurt v FBP | * | | X | | |
| Culter v US | | | | | X |
| Ashkenazi v Atty Gen. | | | | X | |
| Ferguson v Ashcroft | | X | X | | |
| Howard v Ashcroft | | X | X | | |
| Mallory v US | | | X | | |
| McDonald v FBP | | | X | | |
| Tipton v FBP | | X | X | X | X |
| US v Tkabladze | | X | | | |

---

Having summarized this information, the Petitioner offers four key
points in support of his arguments for denial of the Respondent's Motion to
Dismiss:

A.    Contrary to the government's (and OLC Memorandum's) selective referen-
        ces, full readings of the statutes and the legislative history support
        the assertion that the 12/20/02 Policy is an erroneous interpretation.

B.  Respondent's claim that the OLC Memorandum only "...provides guidance
    to the agency on how to interpret its statutory mandate..." and thus
    not subject to APA §553 flies in the face of the new mandate from
    the DOJ and BOP's actions since December 2002.

C.  The new policy--a new interpretation of the statutes--has been imple-
    mented retroactively and thus implicates the <u>ex post facto</u> clause as
    well as the due process clause of the Constitution.

D.  BOP's authority in determining halfway-house placement must be exer-
    cised in the context of our Constitution, legal statutes, program
    guidelines and established practices.

    Therefore, the Respondent's Motion should be denied and the Court
should declare the 12/20/02 Policy invalid.

**ARGUMENT**

A.  <u>Contrary to the government's (and OLC Memorandum's) selective refe-</u>
<u>rences, full readings of the statutes and legislative history support the</u>
<u>assertion that the 12/20/02 Policy is an erroneous interpretation.</u>

    The government's response is based solely upon its argument that
§3624(c) is the only controlling statute for the halfway-house/CCC place-
ments, and therefore the new BOP Policy is a correct application of the law.
To justify its position, the government selectively points to the restrictive
time frames mentioned in §3624(c) while ignoring the words that really de-
fine this statute and contradict the government's erroneous position.  The
government's memorandum also erroneously ignores §3621(b).

STATUTORY LANGUAGE

    A reading of the plain language of the statutes makes it clear that
the BOP's authority in relation to CCC transfers is derived from 18 USC

-4-

§3621(b) and not from §3624(c):

* §3624(c) is not about CCC placements:    There is no mention of CCC in

the language of §3624(c) because §3624(c) is about facilitating a transi-

tion and not about imprisonment.

> "Section 3624(c) does not so much as mention community confinement.
> The phrase never appears; the most reasonable interpretation of
> §3624(c) is that it simply has no relevance whatsoever to community
> corrections facilities.  Even if some reference to community confine-
> ment might somehow be inferred--and it is difficult to see how it
> could be--nothing suggests that Congress intended §3624 to be the
> exclusive mechanism permitting placement of an offender into such
> a facility.

> "The fact is, as noted above, §3624 obviously supports the power of
> the BOP to place offenders in community confinement to serve their
> terms of imprisonment.  If a sentence of imprisonment can be served
> at home, it can be served in a halfway house." Iacaboni v United
> States, 251 F. Supp. 2d 1015 (D.Mass. 2003).

Therefore, even a reading of only §3624(c), as the government's memo-

randum does while ignoring §3621(b), shows that there is nothing in

§3624(c) that supports its position that "... were the BOP to place a

prisoner into a community confinement pursuant to §3624(c) for more than

the last ten percent or in excess of six months of the prisoner's

sentence, the BOP would be in violation of the plain language of the

statute."

* §3624(c) is about a pre-release entitlement:    The meaning of key words

of §3624(c), such as "the BOP ... shall assure ..." and "... will afford

the prisoner ...," implies entitlement and not BOP's authority, or the

lack thereof, in relation to the CCC placement towards the end of an in-

mate's term of sentence.  The entire §3624(c) hinges on the word

"assure"--ignore or remove it and the statute becomes meaningless.

Whereas "not to exceed" defines "a reasonable part."  Ignoring or remov-

ing "not to exceed" does not change the statute's meaning; it just

changes the quantification of a part of the statute.

If the Petitioner may clarify this with an example ... most of our laws are written in the following style of language: "Whoever ... destroys any property of the United States ... shall be imprisoned not more than six months." It is clear and is accepted by our legal system that the primary focus of such a statute is to make the destroying of the property of the United States a crime, with the words "not more than six months" quantifying the maximum punishment. No one would take the primary focus of such a statute to be restrictive first, i.e. one can't be imprisoned for more than six months, and making the destroying of the property of the U.S. a crime as secondary.

Using this analogy, it should be clear that the primary focus of §3624(c) is to "assure." And, supported by the caselaw, §3624(c) was meant to provide a qualified entitlement to a prisoner and not to limit the BOP's authority.

> "Looking at the plain language of Section 3624(c), Congress created there an affirmative obligation on the part of the BOP to assure, underscore assure, to the extent practicable, that the final 10 percent of a prisoner's term be spent in a place that will facilitate the prisoner's integration into the community ..."

> "The government reads the restricted language "not to exceed six months" as restricting the BOP's authority to make any transfer to a transitional location before the six month/10 percent point. In my view, that is incorrect because the BOP's authority to transfer a prisoner to a CCC does not come from such 3624(c) at all. Rather it comes from Section 3621(b).

> "The language "not to exceed six months" restricts the scope of the affirmative duty placed on the BOP by Section 3624(c) to make efforts to "assure" that such transitions take place. It is simply within the BOP's discretion to make such transfers." Bench Opinion of the Hon. K. Wood <u>Greenfield v Menifee</u>, 03-CV-8205 (Wood, J)(S.D.N.Y Oct. 31, 2003).

The plain language of §3624(c) couldn't be clearer that the BOP has an obligation to "assure" that a prisoner is "afforded" an opportunity to adjust and prepare for re-entry into the community. The plain language says

nothing about the BOP's authority, or the lack thereof, to select the place where the sentence, including the last six months or ten percent, would be served.  Therefore, to focus exclusively on §3624(c) while ignoring §3621(b) in relation to the long-established policy and practice is erroneous at best.

LEGISLATIVE HISTORY DOESN'T SUPPORT THE RESPONDENT'S POSITION

A court is not supposed to consult legislative history where, as here, the meaning of a statute is clear from its plain language.  See <u>Arnold v United Parcel Service, Inc.</u>, 136 F3d 854,858 (1st Cir. 1998).

The government's selective reference to the legislative history does not shed any more light on whether the BOP's authority is derived from §3624(c) or §3621(b).  In fact, the government's selective reference is misleading.  The legislative history quoted by the government relates to limiting the term of the home confinement of prisoners.  The 1990 debate, cited by the government did not change anything except adding home confinement to the language of §3624(c) and did not question the BOP's long-established and well-known practice of more than ten-percent and sometimes more than six-month CCC placement.

The government's reference cites the language of a particular representative during floor debate.  Reference to such remarks, without a comprehensive review "... invites the comparison that Judge Leventhal of D.C. Circut has drawn likening legislative history citations to "looking over a crowd and picking out your friends."  Patricia Wald, <u>Some Observations on the Use of Legislative History in the 1981 Supreme Court Term.</u>" <u>Monahan</u>.

The Petitioner believes a comprehensive review of the legislative history--not attempted here and beyond the resources of the pro se Peti-

-7-

tioner--will show that it was not the expansion of BOP's authority, but that of a prisoner's entitlement that was met with opposition in 1990.

At the time of 1990 debate, the halfway-house policy of more than ten percent and in some cases greater than six months--well known to and accepted by the judiciary, the Congress, the DOJ and practicing defense attorneys--had been in place for several years. And yet there doesn't seem to be any discussion or attempt to change the BOP's authority to transfer an inmate to CCC in 1990 or even in 1994, 1995 and 1996 when additional amendments to §3624 were considered.

BOP'S CCC PLACEMENT AUTHORITY IS DERIVED FROM §3621(b)

Several opinions show that the BOP's authority in regard to the place of a prisoner's confinement comes from §3621(b) titled "Place of Imprison-ment." See Iacaboni; Monahan; Greenfield; Zucker v Menifee, No. 03-CV-10077 (RJH)(S.D.N.Y. Jan. 21, 2004); Cato v Menifee, No. 03-CV-5795 WL22725524 (Chin, J.)(S.D.N.Y. Nov. 20, 2003); Ferguson v Ashcroft, 248 F.Supp. 2d 547 (MDLa 2003).

In fact, the BOP's "Program Statement Number 7310.04, Date 12/16/98, SUBJECT: Community Corrections Center (CCC) Utilization and Transfer Procedure" (PS7310) in effect continuously at least until the date of this Memorandum (and its predecessor 7310.02 in place since 1993 until super-ceded by 7310.03 in 1996, which was superceded by 7310.04 in 1998) couldn't make this clearer. PS7310 states the following in Section 5, Pages 3 and 4:

"5.  STATUTORY AUTHORITY.  18 USC §3624(c) provides:

'The Bureau of prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten percent of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community.  The authority provided by this subsection may be used to place a prisoner in home

confinement.  The United States Probation Office shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.'

18 USC §3621(b) provides:

'The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The bureau may designate any available penal or correctional facility ... the Bureau determines to be appropriate and suitable.'  A CCC meets the definition of a 'penal or correctional facility.'

<u>Therefore, the Bureau is not restricted by §3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate.</u> (Emphasis supplied).

Section 3624(c) however does restrict the Bureau in placing inmates on home confinement to the last six months or (10%) of the sentence, whichever is less."

Therefore, two points are clear: (i) §3621(b) gives the BOP complete authority to designate a prisoner's place of imprisonment, and (ii) A CCC is a penal or correctional facility.  This has been the basis--for acceptance by the judiciary, the Congress and even the DOJ until December 2002--of the long-established BOP policy of placing inmates into CCC for longer than ten percent of their sentence and in some cases greater than six months.  Relying on caselaw and the well-established definitions used by the BOP, judges have long recognized CCC as penal or correctional facilities, and in several cases have historically recommended to the BOP that the entire or a part of the defendant's sentence of imprisonment be served in a CCC.

Despite many years of practice, the OLC Memorandum claims that under §3624(b) the BOP does not have the authority to designate inmates in a place it determines appropriate, and the BOP's authority is limited by §3624(c).  Respectfully, the Petitioner asserts that, for reasons and caselaw cited above, this position is erroneous.

-9-

The government's Memorandum cites six cases where on CCC-placement issues, the courts have ruled against the petitioners/plaintiff: <u>Kennedy v Winn</u>, No. 03-cv-10569-MEL (D.Mass. Jul. 9, 2003); <u>Rothberg v Winn</u>, No. 03-cv-11308-RGS (D.Mass. Oct. 10, 2003); <u>Goldings v Winn</u>, No. 03-cv-40161-WGY (D.Mass. Oct. 23. 2003) (pending appeal: 1st Cir. No. 03-2633, argued May 7, 2004); <u>Turano v Winn</u>, No. 03-cv-40188-EFH (D.Mass. Jan. 7, 2004); <u>Messere v Winn</u>, No. 03-cv-40279-EFH (D.Mass. Feb. 10, 2004); and <u>United States v Mikutowicz</u>, No. 2003WL21857885 (D.Mass. Aug. 6, 2003)(Zobel, J.). All of these decisions cited or relied upon Judge Lasker's <u>Kennedy</u> memorandum that the statute controlling these cases is §3624(c).

> "The <u>Kennedy</u> analysis stops short, however--it recognized that §3624(c) did not <u>require</u> that the BOP do anything until Kennedy met the 10 percent marker, and stopped there. Left to consider is whether the BOP was <u>allowed</u> to move Kennedy into community confinement under §3621(b). Section 3624(c) requires the BOP to take steps to transition the prisoner back into society (steps that may, in its discretion under §3621(b), include release into community or home confinement programs, as well as other meaningful gestures at pre-release transitioning devised or sponsored by the BOP). It does not require that the BOP send prisoners to community confinement during the phase-in period, and it requires nothing of the BOP outside that period. Likewise, however, it does not curtail the BOP's discretion under §3621(b), vindicated in this decision, in <u>Iacaboni</u>, and elsewhere around the nation, to move prisoners into community confinement as and when appropriate.
>
> "Given the crystal-clear language of §3624(c), I can only conclude that the BOP's regular practice of releasing prisoners into Coolidge House at the six-month mark--and not the 10 percent mark--of their sentences constituted an exercise of the discretion afforded to the Bureau under §3621(b). Indeed, the DAG Opinion seems to confirm this--as it speaks in the language of §3621(b) on this issue (what the BOP is allowed to do), and not §3624(c) (what it is required to do). DAG Opinion at 1 ("[The BOP] has asked us to advise you whether BOP has general authority, either upon the recommendation of the sentencing judge or otherwise, to place such an offender directly to community confinement at the outset of his sentence or <u>to transfer him from prison to community confinement during the course of his sentence</u>. We conclude below that the BOP has no such authority.") (emphasis added)." <u>Monahan</u>.

-10-

Even if the end-of-the-sentence cases are determined by §3624(c), the net effect of the 12/20/02 Memorandum is a drastic change in the BOP's long-established practice under a well-known rule.  This change resulted, as asserted below, in violations of APA §553 and ex post facto and due process clauses of the Constitution.

> The "... BOP's new interpretation of the relevant statutes is contrary to a plain reading of the statutes, inconsistent with the prior rational interpretations of the statute propounded by both the BOP and OLC, and not supported by the legislative history surrounding the enactment of the statutes in 1984."
> Zucker.

The general grant of authority to BOP via §3621(b) allows the BOP to place a prisoner at any point in the prisoner's sentence in a CCC and had been the basis for at least 17 years of the BOP's practice and policy. This practice and policy did not violate §3624(c) as it met the requirement of assuring and affording, while exercising the BOP authority as defined in §3621(b).

> "... Section 3621(b) grants BOP the discretion to designate an inmate to serve a term of imprisonment in a CCC at any time.  When Section 3624(c) is read together with Section 3621(b), it is apparent that Section 3624(c) does not limit BOP's authority to choose to utilize community confinement in appropriate cases sooner than when it would be required to do so." Cato.

Therefore, the Respondent's Motion should be denied and the Court should declare the CCC Policy dictated by the 12/20/02 Memorandum invalid.

B.    Respondent's claim that the OLC Memorandum only "... provides guidance to the ageny on how to interpret its statutory mandate ..." and thus not subject to APA §553 flies in the face of the new mandate from the DOJ and BOP's actions since December 2002.

The government claims that the 12/20/02 Memorandum is interpretive and "the footnote within the Memorandum that addresses Section 3624(c) is equivalent to a Program Statement because it provides guidance to the agency on

-11-

how to interpret its statutory mandate and, more directly, its limita-
tions." Yet, DOJ and BOP's actions contradict this, and can't be con-
strued as just providing guidance.

> The DOJ's December 13 Memorandum "... characterized as
> "unlawful", under any circumstances, the long-established
> BOP practice of placing inmates in community corrections
> facilities ..."

> "Compelled by this memorandum, the BOP has now taken the
> position that designations of offenders to community con-
> finement to serve sentences of imprisonment are forbidden
> as a matter of law and therefore beyond its discretion.
> As a result the BOP has informed all federal judges that
> it will no longer--ever--consider a judge's recommendation
> that an offender serve a term of imprisonment in community
> confinement, under any circumstances." Iacaboni.

The First Circuit has ruled that such actions constitute substantive
rule making: a "rule with the force and effect of law -- binding not only
on the agency and regulated parties, but also on the courts -- is by
definition a substantive rule." Warder v Shalala, 149 F3d 73, 82 (1st Cir.
1998).

> "In attempting to classify this rule as "interpretive," while
> affording concerned parties no opportunity for meaningful
> input and simultaneously insisting that the rule admits of
> no exception and is legally binding on the BOP, defendants,
> and judges, the government is trying to "have its cake and
> eat it too." " Monahan.

> The effect of the new rule is not merely explanatory:

> "... the BOP has not only adopted a "new position" incon-
> sistent with its previous policy statements, but has
> drastically truncated its own discretion in a manner
> that is in no way "outlined" in the applicable statute."
> Iacaboni.

> "This new policy jettisons a seventeen-year history of
> allowing inmates to serve greater than ten percent of
> their sentence in a CCC. The policy also enacts a
> strict compliance requirement in every case taking away
> any individual case-by-case discretion. Furthermore,
> the policy both puts forth a new interpretation of an
> existing statute and serves to alter the landscape by
> charting a new course of action. This new policy

cannot be merely a new interpretation of BOP policy
because it so drastically alters longstanding policy
and gives the agency a new mandate for its decisions."
Hurt v Federal Bureau of Prisons, etal, 5:03-cv-265-4
(DF)(M.D.Ga Aug. 29, 2003)

Several courts have ruled that the BOP's new CCC transfer policy is
substantive or legislative.  See Greenfield, Monahan, Iacaboni, Hurt.

Therefore, since the implementation of the CCC policy dictated by
the 12/20/02 Memorandum did not meet the rule-making and comment require-
ments of the APA 5 USC §551 and §553, the Respondent's Motion should be
denied and the Court should declare the policy invalid.

C.    The new policy -- a new interpretation of the statutes -- has been
implemented retroactively and thus implicates the ex post facto clause as
well as the due process clause of the Constitution.

The government claims that the "... BOP policy did not change Section
3624(c).  The OLC Memorandum offered an interpretation of the existing
statute."  The government contends that such "corrections" do not violate
the ex post facto clause.  In addition, the government claims that since as
a result of the new policy the "Petitioner's punishment has not been in-
creased or changed ... there is nothing retroactive about the application
of the existing law ..."

The Petitioner asserts that in "correcting any erroneous interpre-
tation," the government has created a new meaning of §3624(c) and §3621(b).
And this new meaning is significantly different from the plain-language
reading of the statutes and from the meaning that had been accepted for
over 17 years.

The Ashkenazi "court noted that in Weaver v Graham, 450
U.S. 24 (1981), the Supreme Court held that "a law need
not impair a 'vested right' to violate the ex post facto
prohibition."  Ashkenazi, 246 F.Supp. 2d 6 (quoting Weaver,

-13-

450 U.S. at 29).  Rather the <u>Weaver</u> Court observed:  Critical
to relief under the Ex Post Facto Clause is not an individual's
right to less punishment, but the lack of fair notice and
governmental restraint when the legislature increases punish-
ment beyond what was prescribed when the crime was consummated.
<u>Weaver</u>, 450 U.S. at 30.  Taking <u>Weaver</u>'s cue, courts have
found that "administrative rules that purport to correct or
clarify a misapplied existing law" can violate the Ex Post
Facto Clause.  <u>Ashkenazi</u>, 246 F.Supp. 2d at 6 (citing, <u>inter
alia</u>, <u>Knuck v Wainwright</u>, 759 F2d 856,859 (11th Cir. 1985) ...

"It is beyond dispute that the BOP's recasting of §3621(b),
which strips it of its discretion in determining an inmate's
place of confinement, has the binding effect of law ...

"Here, where the BOP has for at least seventeen years "conti-
nually exercised [its] statutorily prescribed discretion" to
place prisoners in community confinement facilities,
<u>Ashkenazi</u>, 246 F.Supp. at 7, the DOJ's sneak attack on BOP
discretion unequivocally burdens <u>Weaver</u>'s principle of fair
notice.  The rule change in <u>Knuck</u> was at least occasioned by
a statutory amendment that invited (although it did not man-
date) the revision at issue.  The new BOP Policy, as I have
observed, arrived out of the blue, during the holidays, with-
out notice, comment, or legislative rumbling, to turn seven-
teen year's practice on its head." <u>Monahan</u>.

The BOP's pre-December 2002 CCC policy had been known to judges,

probation officers, prosecutors, defense attorneys and, through defense

attorneys, defendants.  Whether consciously or unconsciously, the factual

assumption about the eligibility of defendants for more than 10% of their

sentence, frequently for six months and in some cases more than six months,

played a role in fashioning sentences and pre-imprisonment processes.

If reliance and expectations are issues, the Petitioner, by veri-

fying his Petition, asserts that prior to beginning his sentence on

December 10, 2002, the Petitioner had established a marketing consulting

practice which he suspended to serve his incarceration.  Based upon the

factual assumption in relation to BOP's CCC policy, the Petitioner had ex-

pectations, at the earliest possible time, to restart his consulting prac-

tice, which takes time to establish (as contacts must be established and

potential client relationships developed), while being employed

-14-

simultaneously during his CCC tenure and aid towards the maintenance and advancement of his family and societal responsibilities.  To the extent that the punishment increases or at the very least disadvantages vis-a-vis the expectations based upon a factual assumption, the Petitioner and his family will suffer irreparable injury.

A recent opinion of Judge Rosenn in the Third Circuit emphasizes the applicability of ex post facto doctrine to policy and not merely to enacted laws and expounds on the Weaver holding of applying the doctrine when a retroactive change "disadvantag[es] the offender affected by it." Mickens-Thomas v Vaughn, 321 F3d 374, 384 (3rd Cir. 2003).  The case is a strong application of the settled law that all the Constitution requires is an "expectation" or "significant possibility."  321 F3d at 392. The Petitioner meets such a standard.

Therefore, since the new CCC policy -- a new interpretation of the statutes with the binding effect of law -- lacked fair notice, and thus implicated ex post facto and due process clauses of the Constitution, the Respondent's Motion should be denied and the Court should declare the policy invalid.

D.    BOP's authority in determining halfway-house placement must be exercised in the context of our Constitution, legal statutes, program guidelines and established practices.

The question in this Petition is not whether the BOP has the authority and discretion, nor whether the BOP can establish or change a policy. This couldn't be defined more clearly in the plain language of §3621(b). The question is should this authority and discretion be exercised in the context of our Constitution, legal statutes, program guidelines and

-15-

established practices.

   The Petitioner asserts that in the context of a plain-language reading of §3624(c) and §3621(b), rule-making provisions of the APA, Article I of the U.S Constitution, the BOP policy dictated by the 12/20/02 Memorandum is invalid.

**CONCLUSIONS**

   For the foregoing reasons, the Petitioner contends that the Respondent's Motion to Dismiss should be denied and the relief requested in the Petition should be granted.

Dated:  June 7, 2004                    RESPECTFULLY SUBMITTED,

                                        _____
                                        KARAMJEET S. PAUL, Pro Se
                                        38516-060    Unit I
                                        Federal Medical Center, Devens
                                        P.O. Box 879
                                        Ayer, MA  01432

**CERTIFICATE OF SERVICE**

   I certify that the foregoing document was served upon Anton P. Giedt, Assistant United States Attorney, by my depositing a copy thereof in the internal mailing system at Federal Medical Center, Devens Camp, postage prepaid, addressed to the Office of the United States Attorney, John Joseph Moakley Courthouse, One Courthouse Way, Suite 9200, Boston, MA 02210 on this 7th day of June 2004.

   I swear under the penalties of perjury that the foregoing is true on this 7th day of June 2004.

                                        _____
                                        KARAMJEET S. PAUL, Pro Se
                                        38516-060    Unit I
                                        Federal Medical Center, Devens
                                        P.O. Box 879
                                        Ayer, MA  01432

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KARAMJEET S. PAUL,                    )
                                      )
              Petitioner              )
                                      )
vs.                                   )        Civil Action No. 04-40037-RCL
                                      )
DAVID L. WINN, Warden                 )
Federal Medical Center, Devens,       )
                                      )
              Respondent              )
_____)


**AFFIDAVIT OF KARAMJEET S. PAUL VERIFYING HIS PETITION**

I, Karamjeet S. Paul, the Petitioner herein, depose and say that the allegations set forth in my Petition in this case are true to my best knowledge and belief, and that the allegations stated to be upon information and belief are true to my best information and belief.

I swear under the penalties of perjury, pursuant to 28 USC §1746, that the foregoing is true on this 7th day of June 2004.


                                    KSPaul
                                    _____
                                    KARAMJEET S. PAUL, Pro Se
                                    38516-060   Unit I
                                    Federal Medical Center, Devens
                                    P.O. Box 879
                                    Ayer, MA 01432


-17-

CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon Anton P. Giedt, Assistant United States Attorney, by my depositing a copy thereof in the internal mailing system at Federal Medical Center, Devens Camp, postage prepaid, addressed to the Office of the United States Attorney, John Joseph Moakley Courthouse, One Courthouse Way, Suite 9200, Boston, MA 02210 on this 7th day of June 2004.

I swear under the penalties of perjury that the foregoing is true on this 7th day of June 2004.

KARAMJEET S. PAUL, Pro Se
38516-060   Unit I
Federal Medical Center, Devens
P.O. Box 879
Ayer, MA 01432

-18-