UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KARAMJEET S. PAUL,          )
                            )
            Petitioner      )
                            )
vs.                         )          Civil Action No. 04-40037-RCL
                            )
DAVID L. WINN, Warden       )
Federal Medical Center, Devens, )
                            )
            Respondent      )
_____)

**PETITIONER'S OBJECTIONS TO THE MAGISTRATE'S REPORT**

The Petitioner objects to the Magistrate's Report on three specific grounds listed below.  The Petitioner also objects to the Magistrate's:

-- Recommendation to deny Petitioner's Motion For A Temporary Restraining Order and A Preliminary Injunction (Docket item No. 13).

- Electronic ORDER entered denying [8] Petitioner's MOTION To Treat Respondent's Motion to Dismiss, Asserting F.R.Civ.P.Rule 12(b)(6), as one for Summary Judgement and to take the Petitioner's Opposition as a Claimant's Motion for Summary Judgment Under Rule 56(a).

The Petitioner respectfully requests the Court to:

- Proceed immediately, as per Rule 72(b) of F.R.Civ.P., and address the issues listed in this memorandum without further referral to the Magistrate due to the exigent circumstances as on 8/11/04 the Petitioner will begin to lose the benefit of any relief granted, and

- Grant the Petitioner's Motion For A Temporary Restraining Order And A Preliminary Injunction (Docket item No. 13).

The Petitioner objects to Magistrate Cohen's Report and

Recommendation (the "Magistrate Report") on three grounds:

- It appears that Magistrate Cohen did not have the opportunity to read the Petitioner's Opposition and Memorandum in Opposition To Government's Motion To Dismiss (Docket item No. 9) (the "Petitioner's Memorandum"), timely filed by mail on 6/7/04 under Local Rule 7.1(b)(2), and thus arrived at conclusions based solely upon what is the prime focus (pages 6-8) of the government's memorandum of 5/24/04 (served on 5/26/04) (the "Respondent's Memorandum").  The Petitioner believes the Respondent's Memorandum is dis#ngenuous and presents misleading selective references and details.  The Magistrate Report is nothing more than a summary of pages 6-8 of the Respondent's Memorandum and should not be used in rela- tion to the Petitioner's Motion For A Temporary Restraining Order And A Preliminary Injunction (Docket item No. 13) or in relation to the Res- pondent's Motion To Dismiss (Docket item No. 6).

- The Magistrate Report (and the Respondent's Memorandum) and its conclu- sion that §3624(c) is the controlling statute are based upon <u>incorrect</u> and <u>incomplete</u> information as explained beginning on page 3 of this memorandum ("Objections and Comments").

- In turning to <u>Kennedy v Winn</u> (2003 WL23150108 (D.Mass. 2003)), the Magis- trate Report on page 3 relies on a critical <u>erroneous</u> comment in Judge Lasker's opinion, which then became the basis for 5 other decisions in this district court, as explained under Objections and Comments below.

In addition, the Petitioner's Memorandum is incorporated by
(Attached)
reference herein. Also following the Objections and Comments this memo- randum will show that:

A.  Contrary to the Respondent's Memorandum's selective references and Judge Lasker's <u>Kennedy</u> opinion as relied upon by the Magistrate Report,

-2-

full readings of the statutes and the legislative history support the
assertion that the 12/20/02 Policy is an erroneous interpretation.

B.  Even if the 12/20/02 Policy were not based upon an erroneous interpre-
    tation, the new policy's implementation without compliance with the
    notice and comment provisions of the APA 5 USC §553 violates the law.
    (The Magistrate Report's and Judge Lasker's reference to 18 USC §3625
    is an error as it has no relationship to APA §553).  The government's
    claim that the OLC Memorandum only "... provides guidance to the agency
    on how to interpret its statutory mandate ..." and thus not subject to
    APA §553 flies in the face of the new mandate from the DOJ and BOP's
    actions since December 2002.

C.  And, even if the 12/20/02 Policy were not subject to APA §553, its retro-
    active implementation clearly violates the ex post facto and due process
    clauses of the Constitution.

        The Petitioner's arguments, objections and comments are suppor-
ted by the overwhelming weight of case law and by an analysis presented
in the Petitioner's Memorandum.

**OBJECTIONS AND COMMENTS**

1.  **A SIGNIFICANT ASSUMPTION IN THE MAGISTRATE REPORT AND THE RESPONDENT'S
    MEMORANDUM IS INCORRECT**

        The Magistrate Report and the Respondent's Memorandum assert
that 18 USC §3621 applied to Monahan v Winn, 276 F.Supp. 2d 196 (D.Mass.
2003) and Iacaboni v United States, 251 F.Supp. 2d 1015 (D.Mass. 2003), and
this petition, similar to Kennedy v Winn, is controlled by §3624.  This is
incorrect on two grounds:

    (i)    In both Iacaboni and Monahan, the opinions concluded in no un-
clear terms: the 12/20/02 Policy is invalid on several statutory and

-3-

constitutional grounds.  In addition, the weight of the analyses and case law (as shown in the Petitioner's Memorandum) against the 12/20/02 Policy on statutory and constitutional grounds is overwhelming.  If a policy is invalid on statutory and constitutional grounds, its implementation is invalid for all inmates, including the Petitioner.  Therefore, to imply that the 12/20/02 Policy is invalid, but its invalidation does not apply to the Petitioner is incorrect.

(ii)    A closer look shows that the Monahan opinion really covered four cases consolidated under the decision memorandum: Monahan v Winn, cv-03-40075-NG; Sardinha v United States, cv-03-10308-NG; United States v Costello and Silveira, cr-01-10385-NG; and Pereira v Winn, cv-03-40139-NG. Pereira involved an end-of-the-sentence situation exactly like the Petitioner's: Pereira had been sentenced and began serving his imprisonment prior to 12/20/02 and was challenging the 12/20/02 Policy.  In finding the 12/20/02 Policy invalid on all four grounds, Judge Gertner issued a 59-page opinion and ruled in favor of each petitioner, including Pereira.

Therefore, to assert that the Monahan opinion does not apply to the Petitioner because of the end-of-the-sentence situation is erroneous.

2. **IN RELYING ONLY ON KENNEDY, THE MAGISTRATE REPORT'S (AND THE RESPONDENT'S MEMORANDUM'S) INFORMATION AND ANALYSIS IS INCOMPLETE AND LEADS TO ERRONEOUS CONCLUSIONS.**

Despite many years of practice to the contrary, the OLC Memorandum of 12/13/02 claims that under §3621(b) the BOP does not have the authority to designate inmates in a place it determines appropriate, and the BOP's authority is limited by §3624(c).  For reasons cited in the analysis and case law summarized in the Petitioner's Memorandum, this is erroneous.

Relying on §3624(c) to justify the BOP's authority or lack

thereof, as do the Magistrate Report, Kennedy opinion, the DAG opinion and the OLC Memorandum, leads to an erroneous conclusion because the plain language of the statute makes it clear that §3624(c) is not about the BOP's authority at all.   There is nothing in it that gives the BOP any authority. In fact, as shown in the Petitioner's Memorandum (page 5), it's not even about CCC placements as there is no mention of CCC in the plain language of §3624(c).   Therefore, unless read in conjunction with §3621(b), the BOP's current practice of transferring inmates to CCC for any length of time would be illegal because §3624(c) does not give the BOP any such authority for CCC transfers.   As indicated by Judge Gertner in Monahan, one must turn to §3621(b) to understand the BOP's authority for CCC transfers, which formed the rationale for its authority for over 17 years.

> "The Kennedy analysis stops short, however -- it recog-
> nized that §3624(c) did not require that the BOP do any-
> thing until Kennedy met the 10 percent marker, and
> stopped there.  Left to consider is whether the BOP was
> allowed to move Kennedy into community confinement under
> §3621(b).  Section 3624(c) requires the BOP to take steps
> to transition the prisoner back into society (steps that
> may, in its discretion under 3621(b), include release
> into community or home confinement programs, as well as
> other meaningful gestures at pre-release transitioning
> devised or sponsored by the BOP).  It does not require
> that the BOP send prisoners to community confinement
> during the phase-in period, and it requires nothing of
> the BOP's discretion under §3621(b), vindicated in this
> decision, in Iacaboni, and elsewhere around the nation,
> to move prisoners into community confinement as and
> when appropriate.
>
> "Given the crystal-clear language of §3624(c), I can
> only conclude that the BOP's regular practice of releasing
> prisoners into Coolidge House at the six-month mark --
> and not the 10 percent mark -- of their sentence consti-
> tuted an exercise of the discretion afforded to the
> Bureau under §3621(b).  Indeed, the DAG Opinion seems
> to confirm this -- as it speaks in the language of
> §3621(b) on this issue (what the BOP is allowed to do),
> and not §3624(c) (what it is required to do). DAG
> Opinion at 1 ("[The BOP] has asked us to advise you
> whether BOP has general authority, either upon the

recommendation of the sentencing judge or otherwise, to place such an offender directly to community confinement at the outset of his sentence or <u>to transfer him from prison to community confinement during the course of his sentence.</u> We conclude below that the BOP has no such authority.")(emphasis added)." <u>Monahan</u> (Judge Gertner's opinion page 31).

3.  **IN TURNING TO <u>KENNEDY</u>, THE MAGISTRATE REPORT RELIES ON A CRITICAL ERRONEOUS COMMENT**

Judge Lasker's opinion, as quoted on page 3 of the Magistrate Report, includes the following sentence: "It is apparent <u>from the language of the statute</u>, however, that to set the halfway house date six (6) months ahead of the release date in Kennedy's case was a mistake because it exceeded the 10% maximum period of halfway house residence <u>permitted</u> under the statute, the <u>language of which specifies</u> that such halfway house residents should be in an amount 'not to exceed 6 months of the last 10 per centum of the term to be served'." (<u>Kennedy</u>) (Emphasis added).

As stated in #2 above, there is no such provision of <u>permitting</u> in the <u>language</u> of §3624(c).

Similarly, the Magistrate Report on page 4 quotes Judge Stearns in <u>Rothberg v Winn</u>, (03-cv-11308-RGS): "However, following the issuance of a Department of Justice (DOJ) memorandum on December 13, 2002, criticizing the BOP's practice with respect to CCC placements generally, the BOP revised its CCC policy to conform to 18 USC §3624(c), which <u>authorizes</u> the placement of a <u>prisoner in a CCC</u> setting only during the last 10 percent of his committed sentence not to exceed six months." (<u>Rothberg</u>) (Emphasis added).

Again, as stated above in #2, there is <u>no such authorization</u> in 18 USC §3624(c).

These are two examples of the erroneous interpretation of the law by the OLC Memorandum, which the Petitioner is challenging. Turning to

these two examples to form the core of the Magistrate Report is tantamount

to saying that the OLC interpretation is not erroneous because the OLC

Memorandum says so.

As stated above, not turning to §3621(b) and relying only on

§3624(c) would make the CCC transfer of inmates even for one day illegal as

it is not authorized by §3624(c). The Petitioner objects to the Magistrate

Report's primary reliance on (as indicated on page 2 of the report by

"... squarely addressed by ...") Judge Lasker and Judge Stearns as  they

did not address the issue at all.  They simply restated the OLC Memoran-

dum which is the focus of the Petitioner's challenge.  Therefore, this

Report should not be used in relation to this case.

**OTHER COMMENTS**

**THE 12/20/02 POLICY IS AN ERRONEOUS INTERPRETATION**

STATUTORY LANGUAGE

A reading of the plain language of the statutes makes it clear

that the BOP's authority in relation to CCC transfers is derived from

18 USC §3621(b):

- §3624(c) is not about CCC placements as there is no mention of CCC in

  its language.

- §3624(c) is about a pre-release entitlement and a BOP obligation to

  facilitate a transition as clearly defined in its language:

> "The Bureau of Prisons shall, to the extent practicable,
> assure that a prisoner serving a term of imprisonment
> spends a reasonable part, not to exceed six months, of
> the last ten percent of the term to be served under
> conditions that will afford the prisoner a reasonable
> opportunity to adjust to and prepare for the prisoner's
> reentry into the community.  The authority provided by
> this subsection may be used to place a prisoner in
> home confinement.  The United States Probation Office
> shall, to the extent practicable, offer assistance to
> a prisoner,during such pre-release custody."
> 18 USC §3624(c)  (Emphasis added).

LEGISLATIVE HISTORY

        Legislative history does not support the Respondent's position. In fact, the government's selective reference is misleading.  The Congress and other branches of the government had known about the BOP's policy and practice of CCC transfers for longer than 10% of the sentence since the statute's enactment in 1984.  Yet, the 1990 debate, cited by the government, did not change anything except adding home confinement to the language of §3624(c) and did not question the BOP's long-established and well-known CCC placement practice.  In fact, changes to §3624(c) were considered in 1990, 1994, 1995 and 1996 and no changes were discussed or attempted in relation the BOP's CCC placement authority or practice.

        As indicated above and discussed in the Petitioner's Memorandum, BOP's CCC placement authority is derived from §3621(b).  This was the basis of CCC transfer practice for over 17 years.  This enabled the BOP to meet its obligations under §3624(c) without exceeding its authority under §3621(b).

        Therefore, the 12/20/02 Policy and the OLC Memorandum's assertion about the BOP's authority for CCC transfer is an erroneous interpretation of the law.

**12/20/02 POLICY AS IMPLEMENTED BY THE BOP VIOLATES APA 5 USC §553**

        On one hand, the government takes a position as outlined in the Respondent's Memorandum that the OLC Memorandum "... provides guidance to the agency on how to interpret its statutory mandate ..." and thus not subject to APA §553.  On the other hand, the DOJ's December 13 Memorandum "... characterized as 'unlawful', under any circumstances, the long-established BOP practice of placing inmates in community corrections facilities. ...Compelled by [the DOJ's Memorandum], the BOP has now taken the position

that designations of offenders to community confinement to serve sentences of imprisonment are forbidden as a matter of law and therefore beyond its discretion." Iacaboni

DOJ's mandatory instructions to the BOP and the BOP's practice since 12/20/02 of not letting any of its employees exercise any discretion doesn't amount to "providing guidance" or "interpretive change." This reversal of BOP's own long-established interpretation -- which has had a dramatic impact on most inmates' CCC time (the Petitioner loses 60% of the time he would have been eligible to serve in a CCC) -- is clearly substantive rule making.

The First Circuit has ruled that such actions constitute substantive rule making: a "rule with the force and effect of law -- binding not only on the agency and regulated parties, but also on the courts -- is by definition a substantive rule." Warder v Shalala, 149 F3d 73, 82 (1st Cir. 1998).

Several courts have ruled that the 12/20/02 Policy change is substantive or legislative. See Greenfield v Menifee, 03-cv-8205 (Wood, J) (S.D.N.Y. Oct. 30, 2003); Monahan; Iacaboni; Hurt v Fed. Bureau of Prisons, 5:03-cv-265-4 (DF)(M.D.Ga. Aug. 29, 2003).

Since the BOP's implementation did not meet the rule-making requirements of the APA 5 USC §553, the 12/20/02 Policy is invalid.

**THE RETROACTIVE IMPLEMENTATION OF THE 12/20/02 POLICY VIOLATES THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE CONSTITUTION**

Prior to a defendant's guilty plea -- particularly under a plea agreement --he/she has to make several decisions, including whether to enter into a plea agreement. Several factors go into these decisions, including what it means to enter into the plea agreement. One of these factors relates

-9-

to: how long a sentence, what kind of facility (camp vs. secured facilities) one might end up at, how much contact with the outside world and the family one would have, how long before one can resume a presence in the community and begin to re-establish his/her life, etc.

As a result, by the time a defendant stands in front of the judge for sentencing, certain factual presumptions -- some of them critical in his/her decision making -- have been established for all three parties: the defendant, the prosecutor and the judge.  When the judge asks, prior to accepting the plea agreement, if he/she understands what it means to plead guilty, there are certain inferential facts in the judge's instructions that relate to the length of the sentence, such as good conduct time credit and CCC placement.  And when the defendant pleads guilty, all of these items verbalized by the judge as well as inferential facts based upon long-established practices that are implied in the judge's instructions become a part of one's plea agreement -- a contract between the defendant and the DOJ, with the blessing of the judge.

To retroactively implement a change in a policy that impacts the stated and implied facts of a plea agreement amounts to changing the rules in the middle of a game and violates the ex post facto and due process clauses of the Constitution.

The BOP's pre-December 2002 CCC policy had been known to judges, probation officers, prosecutors, defense attorneys and, through defense attorneys, defendants, thus constituting a factual presumption and played a role in fashioning sentences and plea agreements.

The Petitioner has stated in his Motion filed on 7/27/04 (Docket item No. 13) that to the extent the 12/20/02 Policy disadvantages him vis-s-vis  factual presumptions, he and his family will suffer irrepa-

-10-

rable injury.

A recent opinion of Judge Rosenn in the Third Circuit empha-
sizes the applicability of ex post facto doctrine to policy and not merely
to enacted laws and expounds on the Weaver v Graham, 450 U.S. 24 (1981)
holding of applying the doctrine when a retroactive change "disadvantag[es]
the offender affected by it." Mickens-Thomas v Vaughn, 321 F3d 374, 384
(3rd Cir. 2003). The case is a strong application of the settled law that
all the constitution requires is an "expectation" or "significant possibi-
ty." 321 F3d at 392. The Petitioner meets such a standard.

The Petitioner asserts that in "correcting any erroneous inter-
retation" as claimed by Judge Lasker in Kennedy and Judge Young in Goldings
v Winn (03-cv-40161-WGY) (pending appeal: 1st Cir. No. 03-2633, argued
5/7/04) and relied upon by the Magistrate Report and as claimed by the Res-
pondent's Memorandum, the government has created a new meaning of §3624(c)
and §3621(b). This claim by the government that since as a result of the
new policy the "Petitioner's punishment has not been increased or changed
... there is nothing retroactive about the application of the existing
law ..." is incorrect and irrelevant. The Petitioner quotes Judge Gertner
in Monahan:

> The Ashkenazi "court noted that in Weaver, the Supreme
> Court held that "a law need not impair a 'vested right'
> to violate the ex post facto prohibition." Ashkenazi,
> 246 F.Supp. 2d 6 (quoting Weaver, 450 U.S. at 29).
> Rather the Weaver Court observed: critical to relief
> under the Ex Post Facto Clause is not an individual's
> right to less punishment, but the lack of fair notice
> and government restraint when the legislature increases
> punishment beyond what was prescribed when the crime
> was consummated. Weaver, 450 U.S. at 30. Taking Weaver's
> cue, courts have found that "administrative rules that
> purport to correct or clarify a misapplied existing law"
> can violate the Ex Post Fact Clause. Ashkenazi, 246 F.
> Supp. 2d at 6 (citing, inter alia, Knuck v Wainwright,
> 759 F2d 856,859 (11th Cir. 1985) ...

-11-

"It is beyond dispute that the BOP's recasting of §3621(b),
which strips it of its discretion in determining an inmate's
place of confinement, has the binding effect of law ..."
<u>Monahan</u>

The 12/20/02 Policy -- a new "corrected" interpretation of the
statutes with the binding effect of law -- lacked a fair notice, and thus
implicated <u>ex post facto</u> and due process clauses of the Constitution.
Therefore, the 12/20/02 Policy is invalid.


The Petitioner asserts that for the reasons cited above, the
Magistrate Report should be rejected.  The Petitioner respectfully requests
the Court to:

-   Proceed immediately, as per Rule 72(b) of F.R.Civ.P., and address the

    issues listed in this memorandum without further referral to the Magis-

    trate due to the exigent circumstances as on 8/11/04 the Petitioner will

    begin to lose the benefit of any relief granted, and

-   Grant the Petitioner's Motion For A Temporary Restraining Order And A

    Preliminary Injunction (Docket item No. 13).


Dated: August 3, 2004                    RESPECTFULLY SUBMITTED,


                                         KSPaul
                                         _____
                                         KARAMJEET S. PAUL, Pro Se
                                         38516-060   Unit I
                                         Federal Medical Center, Devens
                                         P.O. Box 879
                                         Ayer, MA   01432


-12-

CERTIFICATE OF SERVICE

I certify that the foregoing document was served upon Anton P. Giedt, Assistant United States Attorney, by my depositing a copy thereof in the internal mailing system at Federal Medical Center, Devens Camp, postage prepaid, addressed to the Office of the United States Attorney, John Joseph Moakley Courthouse, One Courthouse Way, Suite 9200, Boston, MA  02210 on this 3rd day of August 2004.

I swear under the penalties of perjury that the foregoing is true on this 3rd day of August 2004.

KARAMJEET S. PAUL, Pro Se
38516-060  Unit I
Federal Medical Center, Devens
P.O. Box 879
Ayer, MA  01432